48 F.3d 1217
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Brian FRANCIS, a/k/a Posse, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Carlos IDROVO, Defendant-Appellant.
 Nos. 94-5309, 94-5313.
 United States Court of Appeals, Fourth Circuit.
 Argued: February 2, 1995.
Decided: March 3, 1995.
 
 ARGUED: Duane Gregory Carr, BOWEN & BOWEN, P.C., Richmond, VA, for Appellant Idrovo; David L. Epperly, Jr., EPPERLY, FOLLIS & SCHORK, P.C., Richmond, VA, for Appellant Francis. Nicholas S. Altimari, Assistant United States Attorney, Richmond, VA, for Appellee. ON BRIEF: Helen F. Fahey, United States Attorney, Theodore Bruns, Third Year Law Student, Richmond, VA, for Appellee.
 Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, WILKINS, Circuit Judge, and BUTZNER, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Appellants Brian Francis and Carlos Idrovo appeal their convictions and sentences for conspiracy to possess with the intent to distribute cocaine and cocaine base. See 21 U.S.C.A. Sec. 846 (West Supp.1994). Appellants claim that the district court erred in admitting certain testimony and evidence offered by the Government. They also assert that the district court erred in determining the quantity of drugs attributed to them for sentencing purposes. Finding no merit to these contentions, we affirm their convictions and sentences.
 
 I.
 
 2
 Viewed in the light most favorable to the Government, the facts are as follows. From early 1991 until early 1993, Idrovo supplied cocaine and cocaine base to Robert Antioco, who in turn supplied drugs to Francis and his partner, Mark Lett. After Lett was arrested in August 1992, he informed law enforcement officers that for approximately three months in mid-1992 he and Francis regularly traveled from Richmond, Virginia to New York, where they purchased cocaine from Antioco.
 
 
 3
 On January 5, 1993, Lett made a consensually monitored telephone call from Richmond to Antioco in New York to arrange the purchase of a one-half kilogram quantity of cocaine. FBI agents arrested Idrovo and Antioco when they arrived for the agreed-upon exchange. A briefcase containing the cocaine was found on the armrest next to the passenger seat of Antioco's automobile where Idrovo had been seated. Idrovo was subsequently released, but was again arrested on November 10, 1993.
 
 
 4
 At trial, Antioco testified for the Government that he began purchasing cocaine and cocaine base from Idrovo in early 1989. Antioco further testified that for several months in mid-1992 he regularly supplied Francis and Lett with cocaine and cocaine base that he had obtained from Idrovo. Antioco estimated that Idrovo had supplied approximately 15 kilograms of cocaine over the course of their relationship. The Government also offered testimony related to certain notes that were seized during a consensual search of Idrovo's bedroom. The notes--which contained names, pager numbers and codes, and references to sums of money and quantities of cocaine--were admitted into evidence over Idrovo's objection. Francis and Idrovo were convicted and subsequently sentenced to 292 months and 235 months imprisonment, respectively.
 
 II.
 
 5
 Idrovo contends that the district court committed reversible error when it admitted the notes seized from his bedroom. He maintains that the notes were never specifically linked to him or to the conspiracy charged and therefore that any probative value the notes may have had was substantially outweighed by the danger of unfair prejudice. The Government responds that the notes and the related testimony were "highly probative" because "[t]he testimony ... that the notes were indicative of someone who was moving large amounts of cocaine aided the jury in assessing the merit of the testimony given by Robert Antioco that Idrovo had supplied him with large amounts of cocaine over the term of their relationship." However, the Government failed to offer any evidence to show that the notes were records of transactions that occurred during the course of the conspiracy. We believe that the notes were evidence of other crimes, wrongs, or acts. See Fed.R.Evid. 404(b). As such, their admissibility turned on whether they were "(1) relevant to an issue other than character[,] (2) necessary, and (3) reliable," and on whether the danger of undue prejudice to Idrovo outweighed the probative value of the evidence. United States v. Hernandez, 975 F.2d 1035, 1039 (4th Cir.1992) (internal quotation marks omitted).
 
 
 6
 We need not address the admissibility of the notes at length because Idrovo's conviction must be affirmed in spite of any error if "we can say 'with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error.' " United States v. Nyman, 649 F.2d 208, 211-12 (4th Cir.1980) (quoting Kotteakos v. United States, 328 U.S. 750, 765 (1946)). Antioco's testimony established a longstanding relationship involving the purchase of large quantities of both cocaine and cocaine base from Idrovo. And, Idrovo was present at the scene of the controlled purchase that had been arranged through Lett, sitting in Antioco's vehicle next to a large quantity of cocaine. Further, Lett testified that he and Francis obtained cocaine from Antioco and another individual who was unknown to Lett; this testimony corroborated Antioco's testimony that cocaine from Idrovo passed through Antioco's hands to Francis and Lett. In light of the overwhelming evidence of Idrovo's guilt, we conclude that the judgment was not substantially swayed by the error committed by the district court.
 
 
 7
 We have carefully reviewed Appellants' remaining allegations of error and find them to be without merit.
 
 AFFIRMED